New York County.—HON. D. C. CALVIN, Surrogate.— February, 1881.

## Bolling *v.* Coughlin.

*In the matter of the guardianship of* Annie Sweeney, *an infant.*

The mother of the infant, before her death, confided the custody of her child, who was of tender years, to the petitioner, to maintain and educate in her religious faith. Upon *habeas corpus,* by an aunt, to obtain possession, the supreme court awarded the custody of the infant to the petitioner; whereupon another aunt, without mention of those proceedings, procured, from the surrogate's court, letters of guardianship, which petitioner applied to have so modified as to award the custody to herself. *Held,* that the application of the aunt for letters of guardianship was an attempt to circumvent the order made on *habeas corpus ;* that the petitioner had a right to institute these proceedings; and that the letters should be revoked, as to the infant's person, and the petitioner be appointed guardian thereof, unless the guardian should traverse the allegation that the infant's interests required the appointment of another guardian.

The words "in his behalf," at the beginning of Code Civ. Pro., § 2832, refer to "the ward," and not to "any relative;" the intention of the section being to enable any person to apply for a revocation of letters of guardianship, as where no relative of the infant is willing to make the application.

As to whether a suppression of facts is equivalent to a "false suggestion of a material fact," under subd. 4 of that section, *quære.*

APPLICATION by Christiana Bolling, for the award, to her, of the guardianship of the infant's person.

The petitioner alleged that the infant, who was of the age of eight years, was in her custody, and had been since the death, in 1880, of the infant's mother, who, a long time before her death, requested petitioner to take care of, maintain and educate the child, and committed her to petitioner's custody, and that she had so maintained and educated her to the present time, and was able, willing, and desirous to do so, and to become her guardian. That on January 31, 1881, on the petition of one of the mother's sisters, Mr. Justice BARRETT issued a writ of *habeas corpus* directed to petitioner, upon which she produced the infant and made return to the writ ; which return was traversed by the petitioner in that proceeding, whereupon said justice, after a hearing, dismissed the writ, and awarded the custody of the infant to petitioner.  That subsequently thereto, Ellen Coughlin, another aunt, applied to this court for letters of guardianship of the infant, upon the waiver of the right thereto of the petitioner in the *habeas corpus* proceedings, and, without any notice to this petitioner, or any statement of the proceedings before and determination by Mr. Justice BARRETT, obtained letters from this court, and that the proceedings for those letters were not taken in good faith, or in the infant's interest.  That petitioner was bringing up the infant in the religious faith of her parents, who were Roman Catholics, and that she provided her with a teacher in that faith, and sent her to church and Sunday-school, as requested by her mother ; and averred, on information, that said Ellen was not a proper person to be the guardian, and prayed that petitioner be

appointed such guardian, or that the letters already issued to said Ellen be so modified as to award the guardianship of the infant's person to petitioner.

The order in the supreme court was dated February 4, 1881, and concluded, " and it is further ordered that said Annie Sweeney be, and she hereby is remitted to the care and custody of said Christiana Bolling, to whom the custody of said infant is hereby awarded until the further order of this court."

The petition of Mrs. Bolling was accompanied by several corroborating affidavits, tending also to show that the best interests of the infant would be subserved by committing her care, custody and education to the petitioner. The petition for letters of guardianship was dated February 5, 1881, and signed by Ellen Coughlin, by mark, and the letters were issued February 7, 1881.

TAYLOR & PARKER, *for petitioner*.

THE SURROGATE.—An interview with Judge BARRETT, since the submission of this motion, has confirmed me in my opinion entertained on examining his order, that that painstaking judge carefully investigated the matter upon its merits, having reference to the suitableness of the petitioner and of the minor's aunts to have the custody of said child, and that his order was not made upon any mere technicality, but was based upon his conviction that the best interest of the infant required that petitioner should retain the custody of her, upon the well settled equitable prerogative of the court, to regard such interest as the paramount and controlling consideration, in making such award.

It is quite apparent that the application for letters of

guardianship was made with the purpose of overcoming the effect of Judge BARRETT's order, and of circumventing his award of the custody of the minor to petitioner, as a suitable person to retain such custody, by interposing the strict legal right conferred .by the letters issued by this court, which were issued in ignorance of the proceedings before said justice, and of the petitioner's claim to such custody under the verbal authority of its mother. I hardly need state that, if these facts had come to the knowledge of this court, notice of the application for letters would have been required to be given to the petitioner, and that it would have been my duty to have instituted a careful investigation of all the facts bearing upon the custody of the minor, having reference to her best interests.

It is, however, objected by the counsel for the respondent that, as the petitioner is not a relative of the infant, she has no right to ask for the revocation of the letters, and to this end he refers the words "in his behalf," in section 2832 of the Code, to the words "any relative;" while it seems to me that this is an entirely erroneous interpretation, and that it was the intention of the section to enable "any person" to make the application to revoke, in the ward's behalf ; otherwise a guardian, in a case where the ward should have no relatives, or none willing to make the application, would be able utterly to disregard the obligations of his trust, and dissipate the trust funds. I entertain no doubt of the right of the petitioner to institute these proceedings.

The next objection urged by counsel to this motion, is that the letters were issued upon the proper petition, and cannot be revoked, except under section 2832, above

cited, and that the facts set forth in the petition do not bring the case within the provisions of that section. It is, probably, technically true that the grant of letters was not obtained by "false suggestion of a material fact," though there was a suppression of facts which would have materially affected the determination of this court on the application, if they had been known. But I am of the opinion that the petition and accompanying affidavits brings this application directly within subdivision 6 of the section referred to, and that it becomes the duty of this court to make full investigation of those facts, as they bear upon the true interest of the minor, if they shall be properly traversed ; otherwise that the letters be revoked, so far as they award the custody of the person of the minor, and that the petitioner, on proper application, be appointed the guardian of the person of said minor.

But in case the respondent shall, within two days after service of a copy of the order to be entered herein, interpose an answer to the facts set forth in the moving papers, the matter may be then referred to a referee, to take the testimony, as to whether the appointment of another guardian will best promote the welfare of the minor, and in the meantime all proceedings on the part of the respondent, under her letters as guardian of the person of said minor, may be stayed.

Ordered accordingly.